UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DENIZ EYUBOGLU,

        Plaintiff,

  -v-                                                                            No.  16 CV 6362-LTS

GRAVITY MEDIA, LLC,

        Defendant.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        In this employment discrimination action brought against Gravity Media, LLC ("Defendant" or "Gravity"), Deniz Eyuboglu ("Plaintiff") asserts nine causes of action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the New York State Human Rights Law, Executive Law § 296 et seq. ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 et seq. (the "City Law").  Plaintiff alleges that she was terminated from her employment based on her religion and national origin and in retaliation for filing a complaint with the Equal Employment Opportunity Commission ("EEOC").  (Compl., Docket Entry No. 1.)  Defendant has moved for summary judgment on all counts.  (Docket Entry No. 34.)

        The Court has subject matter jurisdiction of this action under 28 U.S.C. sections 1331 and 1367.

        The Court has considered the submissions of both parties carefully.  For the following reasons, Defendant's motion for summary judgment is granted in its entirety.

## BACKGROUND[1]

Defendant is an advertising agency located in New York City. (Def. 56.1 St. ¶ 1.) Plaintiff is a Muslim woman of Turkish origin. (Eyuboglu Aff., Docket Entry No. 45, ¶ 2.) Lillian Laskin, Defendant's Director of Human Resources and Operations Manager, interviewed Plaintiff for a position as a Graphic Designer and hired her in January of 2011. (Def. 56.1 St. ¶¶ 2-3.) At the time of the interview, Laskin was aware of Plaintiff's Turkish origin.[2] (Id. ¶ 4.) "During her employment[,] . . . [P]laintiff was promoted to the position of Art Director and later to the position of Senior Art Director." (Id. ¶ 6.)

Defendant has promulgated a policy prohibiting workplace discrimination or harassment, which includes a procedure under which internal complaints are to be filed with Laskin. (Id. ¶ 7; see also Pl. 56.1 St. ¶ 7 (disputing whether the complaint procedure is mandatory).) Plaintiff attended training on Defendant's anti-discrimination policy and the complaint procedure in or about September 2014. (Def. 56.1 St. ¶ 8.)

During her 2013 annual review conducted by Laskin and Arthur Melentin, Defendant's Chief Creative Director, Laskin told Plaintiff that her "eyes looked weird" and Melentin called her a "live bomb." (Eyuboglu Aff. ¶¶ 8-9.) Melentin subsequently referred to Plaintiff as a live bomb during her 2014 and 2015 reviews. (Id. ¶ 10.)

---

[1] The facts recited herein are undisputed unless otherwise indicated. Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.

[2] Defendant's assertion in its Rule 56.1 statement that Laskin was aware of Plaintiff's religion at the time of her hiring is unsupported by any evidence and is controverted by Plaintiff's affidavit. (See Def. 56.1 St. ¶ 4; Eyuboglu Aff. ¶ 4; see also Pl.'s 56.1 St. ¶ 4.)

Around April of 2015, Plaintiff's name was removed from several "pitches" to clients that she worked on and replaced with the names of other Gravity employees or contractors. (Eyuboglu Aff. ¶ 11.) Plaintiff's name was replaced on the California Lottery pitch with Henry Liao's name and on the Dish Network pitch with that of a freelancer whose name Plaintiff cannot recall but which she asserted "appeared to be Indian and is difficult to remember." (Id.) At her deposition, Plaintiff testified that Laskin said that she thought Plaintiff's name was removed in favor of an employee who Plaintiff believes was Asian because Defendant was concerned about the appearance of the national origin of employees and believed that fact would be important in securing the client's business. (Eyuboglu Tr. I, Docket Entry No. 56, at 128:5-14.) Plaintiff also testified, however, that her assertion that her name was replaced on the two pitches because of her national origin was not supported by any other evidence and was based on an assumption. (Eyuboglu Tr. I, 136:8-138:3, 142:16-23.) Plaintiff asserts that Ian Nguyen, an Art Director, and Rohan June, a Senior Art Director, are both neither Turkish nor Muslim and have not had their names removed from their work. (Eyuboglu Aff. ¶ 11.)

During a September 2015 meeting, Maneesh Lall, a Creative Director, referred to Plaintiff as "Turkish dominant." (Id. ¶ 12.) On September 24, 2015, Plaintiff sent an email to Laskin, which, in addition to posing questions and presenting complaints about the organizational structure and work flows, referred to Lall's comment. (Docket Entry No. 45-1.)

On November 12, 2015, while most of Defendant's staff was at an overseas retreat, Plaintiff contacted the EEOC from the telephone at her desk to initiate a discrimination complaint against Defendant.[3] (Eyuboglu Aff. ¶ 15; Laskin Aff., Docket Entry No. 35, ¶¶ 36-

---

[3] Although Plaintiff states that she made her call to the EEOC on November 12 and Laskin states that most of Defendant's staff was away on November 13, neither party disputes that most of Gravity's staff was absent when the call was placed.

37.) Plaintiff posits that Defendant learned of her call through a review of security camera records and alleges that Evans Gyamfi, who was Gravity's IT Manager and charged with managing Gravity's security system until August 2016, informed her, on around November 20, 2015, that the cameras had audio capabilities and that Gravity's management regularly reviewed these recordings. (Eyuboglu Aff. ¶ 17; Eyuboglu Tr. II, Docket Entry No. 57, 51:5-52:8; Gyamfi Aff., Docket Entry No. 36, ¶ 2.) While Defendant admits that it has several security cameras in its office, it proffers statements in which Laskin and Gyamfi affirm that these cameras have no audio recording capability. (Gyamfi Aff. ¶ 3; Laskin Aff. ¶ 38.) Gyamfi denies ever having told Plaintiff that the cameras had the capability to record audio. (Gyamfi Aff. ¶ 4; see Eyuboglu Aff. ¶ 18 (acknowledging that Gyamfi now represents he never stated that the cameras could record audio).)

On or about December 10, 2015, Rod Alanis met with Plaintiff to conduct her annual review. (Def. 56.1 St. ¶ 19.) At this meeting Plaintiff disclosed that she was looking for another job and that she had lost trust in Gravity.[4] Alanis then recommended to Laskin that she terminate Plaintiff's employment based on those comments. (Def. 56.1 St. ¶ 20; Alanis Aff. ¶¶ 4-5.) In her affidavit, Plaintiff denies having told Alanis that she did not trust Gravity and proffers that she did not affirmatively state that she was looking for a new job, but rather that

---

[4]    (Alanis Aff., Docket Entry No. 37, ¶ 3 (stating that Plaintiff told Alanis that she "no longer trusted the company" and was "actively sending out her resume and looking for another job"); Eyuboglu Tr. I, 196:4-21 (answering "Yes; I lost my trust in 2015" to the question "Did you tell Rod [Alanis] that you didn't trust the company?") (answering "yes" when asked if Plaintiff "[told Alanis she was] looking for another job"); Eyuboglu Tr. II, 46:5-47:23 ("I put out my resume, yes, . . . [p]utting out a resume means that I started [looking]."), 64:1-65:17 (answering "yes" when asked if she was "indeed looking for another job") ("I wasn't trusting them. I lost my trust in 2015."), 105:9-12 (answering "yes" when asked if she told Alanis "that [she] didn't trust the company and [was] looking for another job").)

Alanis advised her that she should look for a new job and Plaintiff, surprised and startled, simply agreed by saying "okay." (Eyuboglu Aff. ¶ 19.)

On December 22, 2015, Laskin terminated Plaintiff's employment at Gravity, citing Plaintiff's statements that she was looking for a new job and that she had lost trust in the company. (Def. 56.1 St. ¶ 20; see Pl. 56.1 St. ¶ 20 (acknowledging that Laskin cited the aforementioned reasons for her dismissal but, citing an affidavit submitted by Plaintiff in opposition to the motion, denying that Plaintiff made the underlying comments to Alanis).) Laskin represents that neither she nor any other Gravity employee was aware of Plaintiff's EEOC complaint at the time of her termination. (Laskin Aff. ¶ 40.) Alanis also affirms that he was unaware of the EEOC complaint when he recommended Plaintiff be terminated. (Alanis Aff. ¶ 6.)

## DISCUSSION

The pending motion is brought pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Under Rule 56(a), summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a material issue of fact, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986), and the court must be able to find that, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Marvel Entm't, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United States, 996 F. 2d 1455, 1461 (2d Cir. 1993)) (internal quotation marks omitted). A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted). "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

McDonnell Douglas Burden Shifting

Claims for discriminatory employment practices and retaliation under Title VII and the NYSHRL are analyzed under the McDonnell Douglas burden shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973); Hicks, 593 F.3d at 164 (retaliation claims under the NYSHRL and Title VII are analyzed under the McDonnell Douglas framework); Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010) (analyzing NYSHRL discrimination claims under the McDonnell Douglas framework).

Under this framework, Plaintiff must first establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. "Plaintiff's burden of establishing a prima facie case is de minimis." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001). If Plaintiff makes out a prima facie case, the burden shifts to Defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse actions. McDonnell Douglas, 411 U.S. at 802-803. If Defendant meets this burden, Plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by Defendant were not its true reasons but were a pretext for discrimination. Id. at 804. The central question on summary judgment in a Title VII case is whether, taking into account all of the circumstances, the plaintiff has "presented sufficient admissible evidence from which a rational finder of fact could infer that more likely than not she was the victim of intentional discrimination." Bickerstaff v. Vassar College, 196 F.3d 435, 447-48 (2d Cir. 1999) (citations omitted).

Plaintiff's Discrimination Claim

Plaintiff claims that Defendant terminated her employment based on her national origin and religion, in violation of Title VII's guarantee of equal employment opportunities.[5] In order to establish a prima facie case for discrimination under Title VII, a plaintiff must proffer evidence that: "(1) [S]he was a member of a protected class; (2) [s]he was competent to perform the job in question, or was performing the job duties satisfactorily; (3) [s]he suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination." Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010) (per curiam). In her papers, Plaintiff identifies her termination as the relevant adverse employment action. (See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), Docket Entry No. 44, at 4 ("Plaintiff was terminated[,] . . . which constitutes an adverse employment action.").)

Here, the Court assumes, without deciding, that Plaintiff has made her prima facie case for discrimination and turns to its examination of whether Defendant has proffered legitimate, non-discriminatory reasons for terminating Plaintiff's employment. Plaintiff asserts that there is a genuine issue of material fact as to whether Defendant terminated her because she told Alanis she was looking for a new job and had lost her trust in the company, pointing to her

---

[5] The Court declines to consider Defendant's Faragher/Ellerth defense, which bars liability if an "employer exercised reasonable care to prevent and correct promptly any discriminatory harassing behavior and . . . the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer." Ferraro v. Kellwood Co., 440 F.3d 96, 102 (2d Cir. 2006) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998) and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998)) (internal quotation marks and alterations omitted). Defendant did not plead this affirmative defense in its answer and permitting Defendant to first assert such a defense after the close of discovery would unduly prejudice Plaintiff, who is now unable to gather evidence to rebut the defense. See Wilkins v. Time Warner Cable, Inc., 10 F. Supp. 3d 299, 312-13 (N.D.N.Y. 2014) (barring an unpled Faragher/Ellerth defense after the close of discovery as prejudicial to Plaintiff and declining to reopen discovery)).

own affidavit, dated January 31, 2018, in which she states that she never said she lost trust in Gravity and only responded to Alanis after he surprised her with the advice that she begin looking for a new job. (Eyuboglu Aff. ¶ 19.) Because Plaintiff admitted in several instances at her deposition that she had told Alanis during the review meeting that she was looking for another job and that she had lost trust in Gravity, she cannot not create a genuine issue of material fact through an affidavit prepared specifically to oppose summary judgment.[6] See Brown v. Henderson, 257 F.3d 246, 252, 256 (2d Cir. 2001) (no issue of material fact may be created by an affidavit created for summary judgment that contradicts the affiant's previous deposition testimony). The Court, accordingly, concludes that Defendant has proffered uncontroverted evidence of legitimate non-discriminatory reasons for terminating Plaintiff's employment.[7]

The burden therefore shifts back to Plaintiff to demonstrate that Defendant's reasons were nonetheless pretexts for national origin or religious discrimination. In this regard, Plaintiff points to a remark about Plaintiff's eyes looking "weird," references to her as a "live bomb," and the replacement of her name on certain marketing materials with the names of other employees or freelancers who she assumes are neither Turkish nor Muslim. She also points to a colleague's characterization of her as "Turkish dominant," and proffers that Laskin theorized that

---

[6] Although Plaintiff's affidavit statement that she only disclosed that she was looking for a new job in response to Alanis's suggestion is not inconsistent with her deposition testimony (see e.g. Eyboglu Tr. II at 46:12-47:9), whether she was induced by Alanis to disclose this fact or not is immaterial to this motion practice. Her truthful disclosure of this fact to Alanis provided a non-discriminatory reason for Laskin to terminate her employment.

[7] Plaintiff also argues that Defendant fired her shortly after it purportedly learned about her EEOC complaint from audio recordings derived from the security cameras. Although this argument is relevant to whether Defendant terminated Plaintiff's employment in retaliation for her complaint to the EEOC, it is irrelevant as to whether Defendant terminated her due to her religion or national origin.

the replacement of her name on one occasion was designed to appeal to a client by using an Asian employee's name.

Other than the "Turkish dominant" comment, the cited references were not explicitly referential to religion or national origin, and none was made in connection with Gravity's decision to terminate Plaintiff. Plaintiff's cited evidence is therefore insufficient, in light Plaintiff's termination shortly following her statement to her reviewer that she was looking for another job and did not trust the company, to support a rational finding that the reasons cited for her dismissal were pretexts for discrimination. See Galimore v. City Univ. of N.Y. Bronx Cmty. College, 641 F. Supp. 2d 269, 286 (S.D.N.Y. 2009) (finding that racially-charged comments were not pervasive enough or made in connection with the decision to terminate the plaintiff, and thus lacked a sufficient nexus to the termination to establish pretext).

Because Plaintiff has not raised a genuine issue of material fact with respect to whether Defendant's articulated reasons for terminating Plaintiff were pretexts for prohibited discrimination, Defendant is entitled as a matter of law to summary judgment dismissing Plaintiff's claims for discrimination pursuant to Title VII and the NYSHRL.

Retaliation Claim

In order to establish a retaliation claim under Title VII and the NYSHRL, Plaintiff must demonstrate that "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (quoting Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012)) (internal quotation marks omitted).

Plaintiff contends that she was terminated in retaliation for making her complaint to the EEOC. Defendant acknowledges that this complaint was a protected activity, but represents that it was not aware of the complaint until it received the EEOC charge by mail on or about February 2, 2016.[8] Although Defendant has proffered affidavits from Laskin and Alanis specifically denying that they knew of the complaint to the EEOC prior to terminating Plaintiff's employment, Plaintiff argues that there is a genuine issue of fact in this regard. Plaintiff relies on her representation that Gyamfi, Gravity's former IT manager, told her that the company's security system had audio recording capabilities and that "management" regularly reviewed the recordings. Based on this information, Plaintiff proffers her assumption or "guess" that Gravity management reviewed the recordings and heard Plaintiff's side of the EEOC conversation before Plaintiff's employment was terminated. (Eyuboglu Tr. II at 59:14-60:3.)

Defendant, in addition to its specific denial of knowledge, proffers an affidavit of Gyamfi denying that he made the alleged statements and denying that the security system even had recording capability. Plaintiff's contention concerning the recording capability is insufficient to frame a genuine issue of fact as to Defendant's knowledge of Plaintiff's phone call to the EEOC. Discovery has closed and Plaintiff proffers nothing by way of hard information regarding the system's capabilities, much less any records or other information indicative of actual review or knowledge on Defendant's part.

Particularly in light of Defendant's specific denials of knowledge of the telephone conversation, Plaintiff's testimony that she was told that the cameras created audio recordings that management regularly reviewed, even if found credible, is too speculative a basis for a rational jury's inference that Defendant had knowledge of her call to the EEOC. See Gordon v.

---

[8] There is no dispute as to the date on which Gravity received the EEOC charge by mail.

New York City Bd. Of Educ., 232 F.3d 111, 116 (2d Cir. 2000) (finding that the minimal requirements to demonstrate a prima facie case for retaliation are met by demonstrating corporate knowledge of the protected activity). Indeed, she has provided no evidence or explanation as to how management could regularly review entire days' worth of audio recordings while accomplishing the regular work of the company. The Court concludes that the inference that Defendant's management staff learned of the content of Plaintiff's phone call through the screening of all audio conversations purportedly captured by the cameras is unreasonable and speculative. See Millennium Pipeline Co., LLC v. Certain Permanent and Temp. Easements, 552 Fed. App'x 37, 39 (2014) (stating that "speculation is insufficient to defeat summary judgment"); see also EEOC v. Mavis Disc. Tire, Inc., 129 F. Supp. 3d 90, 102 (S.D.N.Y. 2015) ("the court should not accord the non-moving party the benefit of unreasonable inferences" (quoting Berk v. St. Vincent's Hosp. & Med. Ctr., 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (internal quotation marks omitted)). Accordingly, Plaintiff has failed to establish even a prima facie case for retaliation and summary judgment is granted in favor of Defendant, dismissing the Title VII and NYSHRL retaliation claims.

City Law Claims

Having dismissed all Plaintiff's federal and state law claims, the Court declines to exercise supplemental jurisdiction of Plaintiff's City Law claims. 28 U.S.C. § 1367(c); See Lerner v. Fleet Bank, N.A., 318 F.3d 113, 130 (2d Cir. 2003) ("In most circumstances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage.").

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety and this action is dismissed. The Clerk of Court is directed to enter judgment in favor of Defendant and close the case.

This Memorandum Opinion and Order resolves Docket Entry No. 34.

SO ORDERED.

Dated: New York, New York
September 28, 2018

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge